| | | |
|---|---|---|
| Kristen Miles Anderson, | ) | C/A No. 8:12-3203-TMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| The United States of America; Richard Kerns, a/k/a Rick Kerns, a/k/a Rick Kearns; Gregory Johnson, Special Agent, U.S. Secret Service; Thomas Griffin, Jr., Special Agent, U.S. Secret Service; Mark J. Sullivan, Director, U.S. Secret Service; Secretary Janet Napolitano, Department of Homeland Security; and others as yet unknown, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I.      Background

Plaintiff Kristen Miles Anderson ("Plaintiff" or "Anderson") brought suit against the following Defendants: the United States of America ("USA"); Richard Kerns ("Kerns"), a former agent of the U.S. Secret Service ("USSS"); USSS Special Agents Gregory Johnson and Thomas Griffin, Jr.; USSS Director Mark J. Sullivan; Secretary Janet Napolitano, Department of Homeland Security ("DHS"); and "others as yet unknown." *See* Am. Compl., ECF No. 37. This case is before the court[1] on the Motion to Dismiss, or in the Alternative, for Summary Judgment of Defendants USA, Johnson, Griffin, Sullivan, and Napolitano (collectively, the "Federal Defendants"), which the Federal Defendants filed in lieu of answering Plaintiff's Amended

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C. Because the Motion is a dispositive one, this report and recommendation is entered for the district judge's consideration.

Complaint.[2] ECF No. 52. Plaintiff responded to the Motion, ECF No. 60, making this matter ripe for the court's consideration.

II.     Standard of Review

The Federal Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Motions brought pursuant to Rule 12(b)(1) challenge whether the district court has jurisdiction over the action. Fed. R. Civ. P. 12(b)(1). In considering a jurisdictional challenge under Rule 12(b)(1), the Fourth Circuit Court of Appeals explained the following:

> [A] defendant may challenge subject matter jurisdiction in one of two ways. First, the defendant may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. When a defendant makes a facial challenge to subject matter jurisdiction, the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.

> In the alternative, the defendant can contend . . . that the jurisdictional allegations of the complaint are not true. The plaintiff in this latter situation is afforded less procedural protection: If the defendant challenges the factual predicate of subject matter jurisdiction, a trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding. In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.

> []

> . . . But, . . . where the jurisdictional facts are intertwined with the facts central to the merits of the dispute, a presumption of truthfulness should attach to the plaintiff's allegations. In that situation, the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action. A

---

[2] The Motion under consideration is filed by all named Defendants except Defendant Kerns, who is no longer employed by the USSS. Defendant Kerns is separately represented and filed an answer to the Amended Complaint. *See* Answer, ECF No. 48. Nothing in this Report and Recommendation is offered as a ruling as to any claims against or defenses asserted by Defendant Kerns, who is not a party to the Motion under consideration.

trial court should then afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits.

*Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009) (internal citation and quotation marks omitted).

A motion to dismiss for failure to state a claim should not be granted unless the plaintiff has not pleaded sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted); Fed. R. Civ. P. 12(b)(6). Further, on a motion pursuant to Rule 12(b)(6), if matters outside the pleadings are presented to and not considered by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and all parties are to be given "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

The Supreme Court considered the issue of well-pleaded allegations, explaining the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Iqbal*, 556 U.S. at 678. When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the court

need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

III.     Facts

Plaintiff was a teller with a Greenville branch of SunTrust Bank ("SunTrust"). The USSS worked with SunTrust management to investigate potential embezzlement at the branch where Plaintiff worked. Am. Compl. ¶ 8, ECF No. 37.[3] On December 3, 2009, SunTrust investigators, at the direction of the USSS, contacted Plaintiff at her residence and informed her that they suspected she had embezzled funds from the bank. *Id.* ¶ 9. As directed by the SunTrust investigators, Plaintiff drove to the bank branch so she could talk with SunTrust management. *Id.* ¶¶ 10-11. During the meeting, Plaintiff returned approximately $35,000 in embezzled bank funds and gave "several incriminating statements" to SunTrust personnel. *Id.* ¶ 11. After Plaintiff made such statements, Defendants Kerns and Johnson entered the room and identified themselves as USSS agents. *Id.* Defendants Kerns and Johnson then began "re-interviewing" Plaintiff regarding the embezzlement of bank funds. *Id.*[4] Immediately following that interview, Defendants Kerns and Johnson escorted Plaintiff from the bank and placed her in the locked rear seat of their government vehicle. *Id.* ¶ 13. Defendants Kerns and Johnson transported Plaintiff to the Greenville, South Carolina office of the USSS, where she was "criminally processed with her fingerprints and photograph(s) being taken as well as being subjected to further interrogation concerning the alleged theft of the bank funds." *Id.*[5] USSS personnel then transported Plaintiff back to her personal vehicle and permitted her to leave. *Id.* ¶ 14.

---

[3] These facts are set forth from Plaintiff's Amended Complaint.

[4] Factual issues exist regarding whether Plaintiff was given *Miranda* warnings at that time. *See* Am. Compl. ¶ 12.

[5] Plaintiff avers that Defendants Kerns and Johnson arrested her on December 3, 2009. Am. Compl. ¶¶ 13-14. The Federal Defendants take issue, submitting Plaintiff was not arrested until August 2010. *See* Defs.' Mem. 13, ECF No. 52.

Plaintiff alleges Defendant Kerns, the lead USSS agent on her case, "began a predatory and calculated campaign of contacting Plaintiff on her personal cell phone several times per day. *Id.* ¶ 15. She submits Defendant Kerns made these "sexually suggestive telephone calls" and "unsolicited telephone calls/text messages" from his government-issued phone. *Id.*

In January 2010, Plaintiff alleges Defendant Kerns drove to Greenwood, South Carolina to meet with Plaintiff to "'discuss'" her case. *Id.* ¶ 16. Plaintiff characterizes the meeting as having been unannounced and states Defendant Kerns "ordered" her to meet him in a hospital parking lot. *Id.* Defendant Kerns entered Plaintiff's vehicle "without invitation" and "ordered her to drive to a parking lot" outside of Greenwood, where he "grabbed the Plaintiff sexually and then forced her to kiss him on the mouth[.]"*Id.* Plaintiff avers that Defendant Kerns assured her that "as long as she was 'nice' to him, all she would get in her case was probation." *Id.* (internal quotations attributed to Kerns). Plaintiff avers the telephone calls and text messages continued "for the next several weeks." *Id.*

On March 18, 2010, Defendant Kerns called Plaintiff and instructed her to go to Greenville, South Carolina to "'discuss' her case." *Id.* ¶ 17. Defendant Kerns instructed Plaintiff to meet him at the parking lot of a Holiday Inn Express in downtown Greenville, across the street from the USSS office. *Id.* Defendant Kerns then took Plaintiff to a bar across the street from the USSS office. Plaintiff avers she "was intimidated by [Defendant Kerns] and was continually warned that she needed to comply with his requests 'or else[,]' so she complied." *Id.* After 10:00 p.m. that evening, Defendant Kerns instructed Plaintiff to go with him to the USSS office "to review some official papers related to her criminal case." *Id.* ¶ 18. Upon arriving at the USSS office, Plaintiff noted the office was closed and no one else was there. *Id.* She went to use the restroom, and when she returned, Plaintiff observed Defendant Kerns sitting on a sofa in a dark

office. *Id.* Plaintiff saw that Defendant Kerns was naked other than having his gun strapped to his

ankle. *Id.* Plaintiff indicates that, over her objections, Defendant Kerns forced her to perform oral

sex on him and then forced her to have vaginal intercourse. *Id.* Plaintiff avers Defendant Kerns

then "dressed and cautioned the Plaintiff that if she 'got him in trouble,' it would get her in more

trouble in her criminal case." *Id.* Plaintiff also recalls Defendant Kerns' stating, "'It was a good

thing that my boss wasn't here because he would have tried to grab you first.'" *Id.*

In addition to Kerns, Plaintiff has sued the following individuals: the other USSS agent

who was with Kerns at the initial December 2009 meeting (Defendant Johnson); the resident

agent in charge of the Greenville, South Carolina USSS office as of May 2010 (Defendant

Griffin); the director of the USSS (Defendant Sullivan); the secretary of the Department of

Homeland Security (Defendant Napolitano); "others unknown;" and the USA.

IV.     Analysis

In her Amended Complaint, Plaintiff brings the following causes of action:

I.      Claim under 42 U.S.C. § 1983 for Deprivation of Rights under the Fourth, Eighth,
and Fourteenth Amendments as to Defendants Kerns,[6] Johnson, Griffin, Sullivan,
Napolitano, and Others Unknown;

II.     Claim under 42 U.S.C. § 1983 for Deprivation of Rights under the Eighth, and
Fourteenth Amendments as to Defendant Kerns;

III.    Claims under the Federal Torts Claims Act ("FTCA") as to Defendant USA;

IV.     Cause of Action under *Bivens v. Six Unknown Agents of Federal Bureau of
Narcotics*, 403 U.S. 388 (1971) [hereinafter "*Bivens*"], Against Federal Agents
(Defendants Kerns, Johnson, Griffin, Sullivan, Napolitano);

V.      Conspiracy Cause of Action under *Bivens* and § 1983;

---

[6] Although Kerns is listed as a defendant in the heading of Plaintiff's first cause of action, the
allegations in that cause of action are focused on the actions or inactions of the Individual
Federal Defendants. Plaintiff's second cause of action focuses on Kerns alone. *See* Am. Compl.
¶¶ 29-50.

VI.     Intentional Infliction of Emotional Distress as to Defendants Kerns, Johnson, Griffin, Sullivan, Napolitano;

VII.    Negligent Infliction of Emotional Distress as to Defendants Kerns, Johnson, Griffin, Sullivan, Napolitano;

VIII.   Assault and Battery as to Defendant Kerns; and

IX.     Negligence as to Defendants USA, Griffin, and Supervisors of Kerns (including allegations of failure to train/supervise Defendant Kerns, failure to ensure proper procedures followed regarding Plaintiff's criminal case, and failure to monitor after learning of Defendant Kerns' "less than professional" conduct).

Am. Compl., ECF No. 37.

The Federal Defendants move for dismissal of Plaintiff's Amended Complaint for the following reasons:

(1) The court does not have subject matter jurisdiction over the Federal Defendants sued in their official capacities;
(2) The United States has not waived sovereign immunity for constitutional torts;
(3) Supervisory liability does not attach in this matter;
(4) Plaintiff has failed to state a constitutional claim against the Individual Federal Defendants; and
(5) Plaintiff has failed to state a claim for which relief can be granted.

Fed. Defs.' Mot. Dism. ("Defs.' Mem.") 1-2, ECF No. 52. In response, Plaintiff argues that she provided sufficient facts to survive the Federal Defendants' Motion. Pl.'s Resp., ECF No. 60. When practicable, the court considers the Federal Defendants' arguments in the order presented in their Motion.

A.      *Bivens* Jurisdiction/Capacity of Defendants

As an initial matter, Federal Defendants argue that, to the extent Plaintiff brings suit pursuant to *Bivens*, 403 U.S. 388, the court lacks subject matter jurisdiction over Plaintiff's *Bivens* claims against the United States and against the individual Federal Defendants Johnson, Griffin, Sullivan, and Napolitano [hereinafter "Individual Federal Defendants"],[7] whom they

_____

[7] Reference to the "Individual Federal Defendants" is not intended to include Defendant Kerns.

submit have been sued in their official capacities. Defs.' Mem. 3-4. They submit such claims must be dismissed because claims against federal officials in their official capacities are actually claims against representatives of the sovereign, who are immune from suit. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding an official-capacity suit "generally present[s] only another way of pleading an action against an entity of which an officer is an agent" and "is, in all respects other than name, to be treated as a suit against the entity") (internal quotations omitted). In *Bivens*, the United States Supreme Court established a remedy for plaintiffs alleging constitutional violations by federal officials to obtain monetary damages in suits against federal officials in their individual capacities. Based on *Bivens*, courts have recognized that neither federal agencies nor federal officials in their official capacities can be sued for monetary damages in a *Bivens* action. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 486 (1994) (holding a *Bivens* action cannot lie against a federal agency); *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (noting "a *Bivens* action does not lie against either agencies or officials in their official capacity"). Rather, a *Bivens* claim can only lie against individual, personally responsible federal officials or employees, not against the USA itself. It is settled that the USA cannot be sued without its express consent, and express consent is a prerequisite to a suit against the USA. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The USA has not consented to suit except under the FTCA. *Bivens* itself does not logically support an extension of a *Bivens* action to the federal government. In that case, Bivens sued agents of the Federal Bureau of Narcotics who had allegedly violated his rights, not the Bureau itself, 403 U.S. at 389-90; the Court implied a cause of action against the agents in part because a direct action against the government was not available, *id.* at 410 (Harlan, J., concurring in judgment).

In arguing the *Bivens* claims should be dismissed as to the USA and as to the Individual Federal Defendants, whom they contend are sued in their official capacities, the Federal Defendants acknowledge that Plaintiff's Amended Complaint purports to sue the Individual Federal Defendants in their *individual* capacities. *See* Am. Compl. ¶ 4; ECF No. 37. They argue, that, in actuality, they have been sued in their *official* capacities because all of the allegations against the individuals are premised on their official duties as staff employed by the USSS. In support, the Federal Defendants cite a Seventh Circuit opinion that discusses the distinctions between an individual- and official-capacity suit. "If . . . the defendant occupied a given office, and the occupant of that office had a duty (one attaching to any occupant of the office) to do such-and-such, then we have an 'official capacity' suit." *Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986) (Easterbrook, J.). The Federal Defendants review Plaintiff's Amended Complaint and argue the substantive claims against them all relate to their official duties. For example, Plaintiff specifically alleges Defendant Sullivan was responsible for the training, supervision, and conduct of personnel assigned to the USSS. Am. Compl. ¶ 4(c), ECF No. 37. She alleges Defendant Secretary Napolitano had overall supervisory oversight and control of the USSS. *Id.* ¶ 4(d). Plaintiff further alleges Defendants Johnson, Griffin, Sullivan, and Napolitano "had decision and/or policy making authority and created, allowed to exist and followed in practice written and unwritten (yet real) official policies and/or long standing practices or customs that created a substantial risk of harm to [Plaintiff] by allowing Kerns to have private access to and unsupervised power over [Plaintiff], proximately and foreseeably resulting in events that occurred between Kerns and [Plaintiff] described herein." *Id.* ¶ 31.

In response, Plaintiff does not dispute that no *Bivens* action is available against the United States or against individual defendants who are sued in their *official* capacities, nor does

she disagree with the *Walker* decision's description of how one determines whether a suit is brought as an individual- or official-capacity suit. Pl.'s Mem. 6, ECF No. 60. Rather, Plaintiff notes the *Walker* decision goes on to indicate a plaintiff may plead a case either way and that the case notes when a plaintiff chooses to sue in personal capacity, she confronts other problems— namely the inability of proving personal responsibility. *Id.* (citing *Walker*, 791 F.2d at 508). As the *Walker* court notes, claiming an "occupant of a given office should have done something (by virtue of office) but neglected to do so" fails because "most provisions of the bill of rights do not forbid simple neglect, and the constitution does not make supervisory officeholders vicariously liable for the acts and omissions of their subordinates." 791 F.2d at 508 (internal citations omitted). Plaintiff submits her suit does not fall prey to that problem because she has pleaded more than neglect to show "personal responsibility." Rather, she submits she *has* made allegations against the Individual Federal Defendants personally by alleging "affirmative steps taken by Defendants to either tacitly authorize or deliberately ignore unwritten yet real policies of harassment and abuse which resulted in the creation of a substantial risk of violation of Plaintiff's constitutional rights." Pl.'s Mem. 6 (citing Am. Compl. ¶¶ 31-33).

The law is clear that no *Bivens* action is available against the United States or against agents of the United States sued in their official capacities. *See Doe v. Chao*, 306 F.3d at 184. Accordingly, the undersigned agrees with the Federal Defendants that the court is without jurisdiction to consider any actions construed as having been brought pursuant to *Bivens* as against Defendant USA and against the Individual Federal Defendants acting in their *official* capacities. Because Plaintiff purports to have sued the Individual Federal Defendants in their individual capacities, the court will further consider those claims.

B.      *Bivens*: Rule 12(b)(6) Challenges to Counts I, IV, and V.

The Federal Defendants also move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting Plaintiff has not pleaded facts sufficient to state a claim against them under Counts I, IV, or V of her Amended Complaint.

1.   Counts I and IV

In Count I, Plaintiff brings what she couches as a claim pursuant to 42 U.S.C. §1983 against the Individual Federal Defendants and against Defendant Kerns, alleging that they, acting in the course and scope of their employment with the USSS, violated her constitutional rights pursuant to the Fourth, Eighth, and Fourteenth Amendments. Am Compl. ¶¶ 29-44. At its heart, Count I avers the Individual Federal Defendants "had decision and/or policy making authority and created, allowed to exist and followed in practice written and unwritten (yet real) official policies and/or long standing practices or customs that created a substantial risk of harm to [Plaintiff] by allowing Kerns to have private access to and unsupervised power over [Plaintiff], proximately and foreseeably resulting in events that occurred between Kerns and [Plaintiff] described herein." *Id.* ¶ 31. Count IV is styled as a "Bivens Cause of Action Against Federal Agents," and alleges, in full, that the "actions, conduct and omissions" of the Individual Federal Defendants "violated the rights of the plaintiff under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution." *Id.* ¶ 56.[8]

---

[8] Although Plaintiff couches her first cause of action as one brought pursuant to §1983, that statute is inapplicable here because the Federal Defendants cannot act under color of *state* law. The Federal Defendants appropriately address the cause of action as one brought pursuant to *Bivens*, which is applicable to federal actors, and the court considers it a *Bivens* claim. The undersigned notes that case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *See Iqbal*, 556 U.S. at 675-76 (noting a *Bivens* action is the "federal analog to suits brought against state officials" pursuant to § 1983) (internal quotation marks and citation omitted). Plaintiff's fifth cause of action is styled as a "Conspiracy Cause of Action under Bivens and § 1983." Am. Compl. ¶¶ 57-59. The analysis applies with equal force to Plaintiff's first, fourth, and fifth causes of action.

The Individual Federal Defendants argue the *Bivens* claims against them should be dismissed as a matter of law pursuant to Rule 12(b)(6) because *Bivens* liability is available only as to federal officers who are "directly responsible" for constitutional violations. Because Plaintiff has not set forth specific facts regarding actions by the moving Individual Federal Defendants, they argue no actionable *Bivens* action has been pleaded as to them. Defs.' Mem. 6-10, ECF No. 52. Defendants further argue that the *Iqbal* Court made it clear that there could be no respondeat superior/vicarious liability in actions brought under *Bivens* or §1983. *Id.*at 6 (citing *Iqbal*, 556 U.S. at 676-91). Alternatively, they argue Plaintiff has not set forth facts sufficient to state a claim of supervisory liability for constitutional torts of their subordinates based on the Fourth Circuit Court of Appeals precedent, including *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) and *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Defs.' Mem. 7-10.

In response, Plaintiff concedes that neither *Bivens* nor §1983 actions can be premised on the traditional application of respondeat superior/vicarious liability. Pl.'s Mem. 11. However, Plaintiff does not concede that *Iqbal* did away with all forms of potential supervisory liability for constitutional torts. Rather, Plaintiff argues "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates" based on the "recognition that supervisory indifference [to] or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Pl.'s Mem. 11, ECF No. 60 (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Plaintiff argues she has averred sufficient facts to demonstrate personal involvement by each of

the Individual Federal Defendants to survive Defendants' Rule 12(b)(6) challenge to the *Bivens* claims. Pl.'s Mem. 12-15.[9]

The undersigned agrees that, arguably, the *Iqbal* decision signals the end of any potential for recovery based on a supervisory-liability theory under *Bivens* or § 1983. *See Iqbal*, 556 U.S. at 693 ("Lest there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely.") (Souter, J., dissenting). However, *Iqbal* does not expressly so hold. In the absence of such a holding from the United States Supreme Court or similar guidance from the Fourth Circuit Court of Appeals, the undersigned cannot definitively determine whether the Fourth Circuit line of cases beginning with *Slakan* remains viable. Accordingly, the court analyzes Defendants' argument that Plaintiff has failed to state a constitutional claim as to the Defendants in supervisory capacities based on the *Slakan* exception to the no-supervisory-liability-for-constitutional-tort rule.

Pursuant to *Slakan* and its progeny, a plaintiff must establish three elements to prevail under *Bivens* or § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

---

[9] Plaintiff does not seem to argue she has pleaded specific facts regarding direct, personal involvement by the Individual Federal Defendants other than in the context of arguing their liability based on their decision-making, supervisory, and policy-making responsibilities. *See* Pl.'s Mem. 6 (arguing Individual Federal Defendants are liable in their individual capacities not because of their "neglect of an official duty," but because of "affirmative steps taken by [them] to either tacitly authorize or deliberately ignore unwritten yet real policies of harassment and abuse which resulted in the creation of a substantial risk of violation of Plaintiff's constitutional rights."); Pl.'s Mem. 11-15 (discussing the Individual Federal Defendants' challenge to the *Bivens* claims by focusing on potential supervisory liability for constitutional injuries). To the extent Plaintiff claims she has raised additional *Bivens* claims against the Individual Federal Defendants based on direct involvement, the undersigned finds such claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Shaw*, 13 F.3d at 798 (citations omitted); *see Slakan*, 737 F.2d at 373.

In considering whether Plaintiff's Amended Complaint adequately pleads such a cause of action, the court must also be mindful that the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief[.]" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). A pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555, nor will a complaint that tenders "'naked assertion[s]' devoid of 'further factual enhancements'" pass muster. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

The Individual Federal Defendants argue that Plaintiff's allegations against them fail to rise to the level of a violation of Plaintiff's constitutional rights because Plaintiff has not set forth sufficient facts to state such claims against them. Defs.' Mem. 8-10. In support, these Defendants set forth facts from Plaintiff's Amended Complaint, arguing Plaintiff's generalized assertions that they "knew or should have known" about the relationship between Defendant Kerns and Plaintiff are not supported by the facts alleged. They further submit the Amended Complaint does not allege any of them took any direct, personal action with respect to the alleged sexual relationship between Defendant Kerns and Plaintiff. They note the sexual interactions took place when no other USSS staff was present. They further submit that it is "undisputed that once supervisory staff became aware of the relationship between Defendant Kerns and [P]laintiff,

immediate disciplinary action was taken." Defs.' Mem. 8. These Defendants specifically cite to several specific portions of the Amended Complaint, noting Plaintiff alleges her first inappropriate physical contact with Defendant Kerns occurred in January 2010. Am. Compl. ¶¶ 15-16. Plaintiff's Amended Complaint further alleges the sexual assault occurred at the USSS office on the night of March 18, 2010, when no one else was at the office. *Id.* ¶¶ 17-20. The Individual Federal Defendants submit that Plaintiff has not alleged that, at any time between January 2010 through March 18, 2010, she contacted any of the named Federal Defendants or any other USSS official to complain of Kerns' behavior. They note instead that Plaintiff's Amended Complaint specifically alleges she felt that she could not report Defendant Kerns after the sexual assault, because of his threats and intimidation on March 18, 2010. *Id.* ¶ 20.

Even accepting Plaintiff's allegations as true, the Federal Defendants argue Plaintiff has not shown any "plausible reasons" for her to have concluded any other USSS employee knew or should have known of Defendant Kerns' conduct. These Defendants submit Plaintiff has not pleaded sufficient allegations to survive the motion-to-dismiss challenge because Plaintiff has set forth "no proof that Defendants Johnson, Griffin, Sullivan, or Napolitano made any decisions or took any actions with deliberate indifference to potential consequences of any known risk." Defs.' Mem. 9. Defendants argue these facts cannot, as a matter of law, rise to the level of "deliberate indifference. Defs.' Mem. 9-10.

In response, Plaintiff alleges the following facts pleaded in the Amended Complaint adequately plead the first prong of *Slakan*—that the Individual Federal Defendants, as policy-makers, had actual or constructive knowledge of Defendant Kerns' conduct that caused pervasive/unreasonable risk of constitutional injury:

- Plaintiff was transported to the Greenville, SC USSS office where she was criminally processed, fingerprinted, photographed, and subjected to further interrogation, Am. Compl. ¶ 13, ECF No. 37;
- Plaintiff was then taken back to her vehicle and permitted to return to her home, *id.* at 14; the Amended Complaint avers that Plaintiff had been arrested that day and that permitting her to leave Greenville was "in clear violation of procedures set forth in Rule 5 of the Federal Rules of Criminal Procedure []." Plaintiff avers this failure to take her before a United States Magistrate Judge "without delay" violated mandated procedures, and "whether intentionally or unintentionally," Defendants Kerns and Johnson prevented her "from being properly advised of the charges against her," and "prevented her from being assigned defense counsel as early as December 3, 2009." *Id.* Plaintiff avers this was a "clear violation of her Due Process." *Id.*
- Defendant Kerns used his government-issued cell phone for his "predatory and calculated campaign of contacting the Plaintiff several times per day via her personal cellular telephone." *Id.* ¶ 15.
- In January 2010, Defendant Kerns drove the government-owned vehicle assigned to him to Greenwood to meet with Plaintiff during regular business hours. When Plaintiff met him, Kerns got into Plaintiff's car, ordered her to drive to a park, where he then "grabbed [] Plaintiff sexually" and "forced her to kiss him." *Id.* ¶ 16.
- On March 18, 2010, Kerns raped Plaintiff in his supervisor's office, using a firearm and his position of authority to force himself upon Plaintiff. *Id* ¶¶ 19-20.
- At the time of the March 18, 2010 sexual assault, Plaintiff avers Kerns told her, "It was a good thing that my boss wasn't here because he would have tried to grab you first." *Id.* ¶ 20. [10]

Pl.'s Mem. 12.

Having considered the parties argument in light of applicable law, the court finds the Federal Defendants' Motion to Dismiss for Failure to State a Claim under *Bivens* as to Defendants Johnson, Griffin, Sullivan, and Napolitano should be *granted*.

*Iqbal*, upon which the Federal Defendants rely in large part, was itself a supervisory liability case in the *Bivens* constitutional tort arena. In that case, a Pakistani plaintiff who was arrested on criminal charges in the wake of the September 11, 2001 attacks brought claims of

---

[10] Plaintiff pleads these claims against all of the Individual Federal Defendants, including Johnson (the partner of Kerns), referencing their policy- and decision-making authority. Am. Compl. ¶¶ 30-44. The Individual Defendants move to dismiss these claims as to all of them, including Johnson. Defs.' Mem. 6-10. However, in responding to the Motion, Plaintiff characterizes the challenge as applying only to Defendants Griffin, Sullivan, and Napolitano. Pl.'s Mem. 11-15. This discrepancy notwithstanding, the court's analysis herein applies to these claims against all of the Individual Federal Defendants, including Johnson.

supervisory liability against several defendants, including the Attorney General of the United States and the Director of the Federal Bureau of Investigation. *Iqbal*, 556 U.S. at 668. Although Iqbal brought claims against corrections officers with whom he had day-to-day contact, it was his claims of supervisory liability against "officials who were at the highest level of the federal law enforcement hierarchy" that the Court considered. *Id.* In *Iqbal*, the Court held that Iqbal's complaint did not contain sufficient factual allegations to establish a plausible equal protection claim.[11] Iqbal's allegations that the "petitioners knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest;" that one of the petitioners was "the principal architect of this invidious policy;" and that the other petitioner "was instrumental in adopting and executing it" were found to be conclusory and not entitled to the assumption of truth. 556 U.S. at 680-81 (internal quotation marks, alterations, and citations omitted). Further, the Supreme Court held that Iqbal's factual allegations that "the [FBI], under the direction of [one petitioner], arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11" and that "[t]he policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by [the petitioners] in discussions in the weeks after September 11, 2001" did not "nudge his claim of purposeful discrimination across the line from conceivable to plausible." *Id.* at 681-83 (internal quotation marks and citations omitted).

Plaintiff argues that Defendant Kerns's statement that "it was a good thing that [his] boss" was not in the office at the time of the sexual assault because the boss would "have tried to

---

[11] To plead an equal-protection claim against the high-ranking supervisors, Iqbal was required to plausibly plead the defendants had acted with "discriminatory purpose or intent." Although the standard in this case is one of "deliberate indifference," the pleading principles of *Iqbal* apply with equal force. *See Mitchell v. Rappahannock Reg. Jail Auth.*, 703 F. Supp. 2d 549, 559 (E.D. Va. 2010) (§ 1983 action noting this distinction).

grab [Plaintiff] first," (Am. Compl. ¶ 20), sufficiently pleads facts that show the Individual Federal Defendants had actual or constructive knowledge of behavior by Kerns that posed a "pervasive and unreasonable risk" of injury to citizens such as Plaintiff. Plaintiff argues that that statement, considered with the fact that Kerns used a government-issued phone and automobile to speak with and meet with Plaintiff, permit a reasonable inference that Kerns' and Johnson's "immediate supervisor [John Doe] had actual knowledge of this misconduct." Pl.'s Mem. 11-13. Plaintiff also submits these actions "at the least" show that Defendant Johnson (Kerns' partner) had knowledge of the actions. *Id.*[12] She submits that her pleaded allegations concerning the knowledge on the part of Defendants Griffin, Sullivan, and Napolitano regarding "policies which facilitated Kerns' harassment and sexual assault of Plaintiff" suffice to survive the Federal Defendants' Motion to Dismiss. *Id.*

Plaintiff further argues she has pleaded facts sufficient to establish deliberate indifference. She acknowledges deliberate indifference is something more than negligence and that this prong requires proof that the actor "disregarded a known or obvious consequence of his action." Pl.'s Mem. 14 (citing *Board of Cnty. Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997)). However, rather than point to specific facts that she submits demonstrate the Federal Defendants acted with the requisite "reckless indifference," Plaintiff looks once more to her generalized pleading allegations that "Defendants were either proponents of the unwritten policies in question, or were so deliberately indifferent as to tacitly authorize the use of harassment and other tactics which placed Plaintiff and others at high risk of violations of their constitutional rights." Pl.'s Mem. 14. Plaintiff submits such allegations establish the plausibility that the Federal Defendants were deliberately reckless. *Id.* Plaintiff also argues Defendants

---

[12] Even if knowledge could be attributed to Defendant Johnson, Plaintiff would still need to establish the remaining prongs of *Slakan* to make out a viable claim against him.

Griffin, Sullivan, and Napolitano have either been active proponents of policies that permitted Kerns the opportunity to harass Plaintiff or have responded to such policies in such a way that makes them equally as culpable as if they had established them. She submits that, without these unwritten policies, Kerns would not have been able to harass Plaintiff. Pl.'s Mem. 14-15. Accordingly, Plaintiff submits she has established the requisite causal link between Defendants' actions/inactions and Plaintiff's harm. *See* Pl.'s Mem. 14-15 (arguing the claimed *unwritten policies* promoted the "use of such sexual intimidation and procedural end-runs as used by Kerns" and that the policies are "widely recognized within the USSS and foster an environment of sexual misconduct and procedural regulations so loose as to violate Due Process.").

Here, Plaintiff has not alleged facts that plausibly rise to the level of stating a claim that the Federal Defendants acted with knowledge, constructive or otherwise of policies that demonstrate "deliberate indifference" to her constitutional rights. Rather, the Amended Complaint avers these Defendants are liable because they had "actual and/or constructive notice" of "written and unwritten (yet real) policies, omissions, and deliberate indifference to the safety of female arrestees generally and [Plaintiff] in particular" that "would likely result in a substantial risk of harm," and that they failed to take action to correct such harm. Am. Compl. ¶ 35. These allegations, without any facts to demonstrate the existence of such "written and unwritten (yet real) policies," do not pass muster under *Twombly* and *Iqbal*. Rather, such allegations provide only a formulaic recitation of the elements necessary to establish potential supervisory responsibility for constitutional torts. *See Twombly*, 550 U.S. at 555 (finding formulaic recitation of elements of a cause of action insufficient). Similarly, Plaintiff has not set forth sufficient facts to show it was plausible that the Federal Defendants had knowledge of policies and their failure to take action rose to the level of deliberate indifference that could be

causally linked to Plaintiff. At bottom, Plaintiff's argument hinges on the existence of "written and unwritten (yet real) policies" of which the Federal Defendants were aware and as to which they took no action. Again, simply restating the necessary elements is insufficient. *Iqbal*, 556 U.S. at 678. Plaintiff has not pleaded facts sufficient to identify the existence of a specific policy that she argues caused her injuries. *See Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (affirming 12(b)(6) dismissal because plaintiff did not plead facts regarding a specific policy and did not adequately support a bald proposition that a law enforcement officer's "common practice implemented an official government policy or custom.") (internal quotation marks and citation omitted); *see also Kinard v. City of Greenville*, C/A No. 6:10-3246-TMC, 2012 WL 1340103, *4 (D.S.C. Apr. 18, 2012) (granting motion to dismiss in § 1983 case because plaintiff had not adequately pleaded an official policy or custom or tied such to his injuries). The facts upon which Plaintiff relies and from which she asks the court to make inferences regarding specific policies—whether "written or unwritten (yet real)"—do not support such inferences.

Similarly unsuccessful are Plaintiff attempts to demonstrate she has pleaded facts sufficient to show deliberate indifference. As noted above, Plaintiff again looks to the "unwritten policies," arguing, in part, that Defendants "were either proponents of the unwritten policies in question, or were so *deliberately indifferent* as to tacitly authorize the use of harassment and other tactics . . . ." Pl.'s Mem. 14 (emphasis added); *see* Am. Compl. ¶ 33 (averring Defendants Johnson, Griffin, Sullivan, and Napolitano "exhibited deliberate indifference toward the safety of [Plaintiff] by allowing her to be exposed to a substantial risk of harm at the hands of Kerns."). Such pleading is not sufficient. *Iqbal*, 556 U.S. at 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotation marks omitted). Plaintiff

has not set out any facts indicating there was any such "policy" in place, nor has she provided any information regarding knowledge on the part of Defendants, much less facts to show "deliberate indifference." "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). *See also Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997) (explaining that decisions taken by a policymaker may be "clearly unfortunate, might perhaps be thought imprudent, or even be found legally negligent, but that does not suffice; only decisions taken with deliberate indifference to the potential consequences of known risks suffices to impose municipal liability on the basis that such decisions constituted official [municipal] 'policy'"). Plaintiff simply has not pleaded facts that make it plausible to find the Federal Defendants acted with deliberate indifference.

Similarly, Plaintiff has not provided facts that plausibly indicate an affirmative causal link between her injury and the claimed action or inaction by the Federal Defendants based on the above-discussed "policy." *See Slakan*, 737 F.2d at 376. Other than Kerns' use of a government phone and automobile and his alleged comment about his boss's proclivities, Plaintiff has not offered supporting facts for her argument of supervisory liability in the constitutional-tort context. These thin reeds are insufficient. Plaintiff offers only conjecture that supervisory individuals had knowledge of any "policy" and does not provide evidence of other incidents or similar information that could make a "possible" scenario "plausible."

As an example of a case in which a plaintiff's pleading did survive a Rule 12(b)(6) challenge, consider *Mitchell v. Rappahannock Reg. Jail Auth.*, 703 F. Supp. 2d 549 (E.D. Va. 2010). In that case, the inmate plaintiff brought a §1983 suit against a corrections officer who assaulted her numerous times. She also sued corrections officers who were her alleged attacker's superiors, arguing they were responsible based on a theory of supervisory liability. In

considering the challenge, the court considered *Iqbal* and found the plaintiff had set forth much more specific allegations that provided a clear causal link. 703 F. Supp. 2d at 559-60. In her amended complaint, the plaintiff pleaded specific instances in which supervisory personnel took actions and exhibited the same deliberate indifference about which plaintiff herself was suing. *Id.* at 560. She averred each of the named defendants "witnessed or participated in" several such actions; each of the defendants had direct knowledge of personal remarks to her by the offending correctional officer; and each of the defendants had witnessed incidents in which that officer followed plaintiff into a storage room and assaulted her, without doing anything to assist plaintiff. *Id.* Although this level of detailed pleading is not necessary for such a claim to survive a Rule 12 challenge, this example is provided to demonstrate the type of detail that proves helpful in permitting the court to determine a supervisory-liability claim pursuant to *Slakan* is more than a "mere possibility."

For the reasons discussed above, the undersigned recommends the Individual Federal Defendants' Motion to Dismiss be *granted* as to Plaintiff's first and fourth causes of action in her Amended Complaint.

## 2. Count V: Conspiracy Cause of Action Under *Bivens* and § 1983

Plaintiff also brings a *Bivens* claim against the Individual Federal Defendants and Defendant Kerns, alleging they "conspired with each other, and with other persons named and/or unnamed in this Complaint to wrongfully violate the Constitutional Rights of the plaintiff." Am. Compl. ¶ 58. Plaintiff then refers back to the "Facts" section of the Amended Complaint, stating the "acts and omissions" described therein "were taken and made in furtherance of and during the course of this conspiracy." *Id.* ¶ 59.

To establish a civil conspiracy under § 1983 (and, by extension, under *Bivens*), a plaintiff must present evidence that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy [that] resulted in deprivation of a constitutional right[]." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Defendants argue the Amended Complaint offers only conclusory allegations that are insufficient to survive a Rule 12(b) motion. Defs.' Mem. 15-16. The Individual Federal Defendants specifically argue Plaintiff has not alleged facts that show they "shared a "unity of purpose or a common design' to injure the plaintiff." Defs.' Mem. 16 (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946)). Nowhere in her memorandum does Plaintiff specifically respond to this portion of the Federal Defendants' Motion.

The court agrees with the Individual Federal Defendants. As noted by the Fourth Circuit Court of Appeals, one trying to establish a civil rights conspiracy has a "weighty burden[.]" *Hinkle*, 81 F.3d at 421. Plaintiff has not pleaded facts sufficient to demonstrate it is plausible that the Federal Defendants acted jointly to injure Plaintiff. The undersigned recommends the Individual Federal Defendants' Motion to Dismiss be *granted* as to Cause of Action V, "Conspiracy Cause of Action Under Bivens and § 1983."

### C.  FTCA Claims

The FTCA waives sovereign immunity as to the United States, and a lawsuit against the United States shall be the exclusive remedy for those with claims against the United States for "money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his . . . employment." 28 U.S.C. § 1346(b)(1). The FTCA does not, however, create a cause of action against individual defendants acting within the scope of government employment. Rather, causes

of action created by the FTCA must be exclusively brought against the United States government. 28 U.S.C. § 2679(b) ("The remedy against the United States provided by [FTCA] ... is exclusive."). The FTCA's waiver of sovereign immunity is limited as it imposes tort liability on the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA further provides that "the law of the place where the act or omission occurred" will govern. 28 U.S.C. § 1346(b)(1). Thus, under these circumstances, the United States is equivalent to a private citizen who is subject to the laws of the place where the injury occurred. *See id.* Here, it is undisputed that South Carolina substantive law applies. *See Matthews v. United States*, 825 F.2d 35, 36 (4th Cir. 1987); *see also Piggott v. United States*, 480 F.2d 138, 140 (4th Cir. 1973).

1. USA's Potential Vicarious Liability for Acts of Defendant Kerns

Plaintiff's third cause of action in her Amended Complaint is brought "against the United States under the [FTCA]," claiming that, during the relevant time period, all Defendants (including Kerns) "were acting within the scope of their employment." Am. Compl. ¶ 52; *see id.* ¶¶ 51-54. Plaintiff submits that, because a private person would be liable to her "for the acts and omissions [] described herein," the United States is liable for the acts and omissions of its employees and agents[.]" *Id.* ¶ 53.

Defendant USA does not dispute the court's subject-matter jurisdiction over the FTCA claim against the USA as to Defendant Kerns's alleged assault and battery against Plaintiff,[13] noting Plaintiff appropriately exhausted her administrative remedies. Defs.' Mem. 10, ECF No. 52; *see* 28 U.S.C. § 2675. Rather, Defendant USA argues it is not liable under the FTCA for the

_____

[13] The USA indicates in its Motion that there is no dispute but that the Individual Federal Defendants—Johnson, Griffin, Sullivan, and Napolitano—were acting within the scope of their official duties. Defs.' Mem. 18. Accordingly, the USA submits it is the "only proper defendant and the individually named defendants are entitled to dismissal." *Id.* This is discussed within.

torts committed by Defendant Kerns because he was not acting within the scope of his employment when he allegedly committed assault and battery on Plaintiff. Defs.' Mem. 10-11.

As an initial matter, the FTCA provides a procedure under which the USA is to certify that its employees who are defendants in tort actions were "acting within the scope of [their] office or employment at the time of the incident out of which the claim arose[.]" 28 U.S.C.A. § 2679(d)(1). When so certified, the court is to substitute the USA as the party, rather than the employee in his or her official capacity. *Id.* Here, the USA does not contend Kerns was acting within the scope of his employment, and it did not file such a certification. When the USA "has refused to certify scope of office or employment[,]" the employee may challenge that refusal in court at any time before trial. 28 U.S.C.A. § 2679(d)(3). In this case, however, both the USA and Defendant Kerns argue that Kerns was *not* acting within the course and scope of his employment at the pertinent times. *See* Defs.' Mem.10-11, ECF No. 52; Defs.' Mot. Extend Time ECF No. 49 (noting Kerns' actions were outside the scope of his employment); Def. Kern's Answer to Am. Compl.¶ 2, ECF No. 48 (denying complained of acts were "performed under color of law or within the scope of his employment"). Plaintiff takes the position that Kerns' acts were within the course and scope of his employment; however, the FTCA procedure concerns the USA and employees only. *See Callaham v. U.S.,* C/A No. 3:12-cv-579-JFA, Order ECF No. 29 (D.S.C. May 2, 2012) (not available on Westlaw or Lexis) (noting specialized procedure set out in 28 U.S.C.A. § 2679(d)(3) not applicable when a non-employee plaintiff challenges government employer's position that its employee/tortfeasor was acting outside scope of employment). Accordingly, the court herein considers Defendant USA's argument that it is not liable for the tortious actions of Kerns under the theory that a master is responsible for the actions of its

servants pursuant to respondeat superior or vicarious liability. *See* Defs.' Mem. 10-11. In considering this issue, South Carolina law applies. *See* 28 U.S.C. § 1346(b)(1).

In South Carolina, an employer is liable for the torts of his employee when the employee commits the act in question while acting "about his master's business and acting within the scope of his employment." *Lane v. Modern Music, Inc.*, 136 S.E.2d 713, 716 (S.C. 1964). "An act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business." *Id.* However, an employee's act "done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of employment so as to render the master liable." *Id.* When an employee "steps aside" from the employer's business "for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended;" and this is "no matter how short the time, and the master is not liable for his acts during such time." *Id.* *See also Gainey v. Kingston Plantation*, C/A 4:06-3373-RBH, 2008 WL 706916 (D.S.C. Mar. 14, 2008) (granting summary judgment to employer, finding allegedly tortious assault of plaintiff done outside scope of employee's employment).[14]

Defendant USA argues Defendant Kerns was not acting within the course and scope of his employment when allegedly assaulting and battering Plaintiff and submits this is a decision the court can make as a matter of law in considering the Motion to Dismiss. Defs.' Mem. 10-11. Defendant USA submits the allegations against Defendant Kerns "clearly show that his actions were in no way related to the performance of his duties for the USSS or that they in any way

---

[14] Defendant USA also cites a portion of a South Carolina statute that excludes an employer's liability for "'employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.'" Defs.' Mem. 10-11 (citing S.C. Code Ann. § 15-78-60(17)). That statute is a portion of the South Carolina Tort Claims Act, which is not applicable to suits against the USA.

advance the USSS' purposes." *Id.* at 11. Plaintiff argues the question of whether Kerns was acting within the course and scope of his employment is one of fact. Pl.'s Mem. 9-10.[15]

When the employee's "deviation from the course of his other employment is very marked and unusual, the matter may be determined by the court rather than by submitting the question to the [fact-finder]." *Tucker v. U.S.*, 385 F. Supp. 717, 722 (D.S.C. 1974) (citations omitted). *See also Carroll v. Beard-Laney, Inc.*, 35 S.E.2d 425, 427 (S.C. 1945) ("'Whether the extent of [the employee's] departure from the scope of his employment, or the area of his service was so unreasonable as to make his act of deviation an independent journey of his own, rather than a mere detour or one incidental to his employment, is a question of degree which depends on the facts of the case and is a matter for the determination of the jury, unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his employment and make his conduct a complete departure from the business of the master.'") (quoting 35 Am. Jur. 991).

Plaintiff submits the facts of this case, although "admittedly extreme," create questions of fact regarding the degree of Defendant Kerns' deviation that should be tried by a jury.[16] Pl.'s Mem. 10. The Motion the court considers herein, though, is not one for summary judgment after appropriate discovery. *See* Fed. R. Civ. P. 56. Instead, the court must determine whether the USA is entitled to dismissal because, even based on the available facts taken in the light most

---

[15] Plaintiff also argues the facts of this case are analogous to those in *Millbrook v. United States,* 133 S. Ct. 1441, 1443-44 (2013), in which it was determined that the USA could be found liable under the FTCA for a law enforcement officer's forcing plaintiff to perform oral sex against his will. However, in that case, the USA had certified the law enforcement officer was acting within the scope of his employment, and the Court expressly noted it made no decision on that issue. 133 S. Ct. at 1445 n.3. The *Millbrook* case is discussed within concerning exceptions to FTCA liability.

[16] The court notes that FTCA claims "shall be tried by the court without a jury[.]" 28 U.S.C. § 2402. Accordingly, the court considers Plaintiff's argument as one that the issue of whether Defendant Kerns was acting within the scope of his employment for FTCA-claims purposes as being one for the finder of fact—whether court or jury.

favorable to Plaintiff,[17] Plaintiff has not set forth a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12. The consideration here is not whether there are sufficient disputed facts to require a fact-finder to make factual determinations.

Having considered the parties' arguments and the applicable law, the undersigned is of the opinion that Defendant USA's Motion to Dismiss should be *denied*. The undersigned first notes that Plaintiff's cause of action for Assault and Battery against Defendant Kerns focuses specifically on the time period "[i]n/around January 2010[.]" Am. Compl. ¶ 72. That is noteworthy because consideration is to be given not just to Kerns' alleged sexual assault of Plaintiff in March 2010, but to other of Kerns' actions as related to Plaintiff.

As Plaintiff points out, Defendant Kerns' introduction to, and at least some of his contact with, Plaintiff was directly related to Defendant Kerns' being a special agent of the USSS. Plaintiff first met Defendant Kerns on December 3, 2009—a meeting that specifically concerned Plaintiff's purported embezzlement of funds from her bank employer. Defendant Kerns and others involved with USSS were unquestionably involved with the investigation into Plaintiff's alleged embezzlement. Defendant Kerns took Plaintiff's statement that day. Plaintiff avers that Defendant Kerns' regular contact with her took place by his using his government-issued mobile phone and was related in some manner to the investigation. As alleged by Plaintiff, when Defendant Kerns drove to Greenwood, South Carolina to visit Plaintiff in January 2010, he did so during business hours and in a government vehicle. Further, when Defendant Kerns contacted Plaintiff on March 18, 2010, Plaintiff indicates he called during regular business hours and

---

[17] Defendant USA acknowledges the court's jurisdiction over this claim, Defs.' Mem. 10, making the challenge one under Rule 12(b)(6). To the extent Defendant USA has presented a Rule 12(b)(1) challenge to this FTCA claim, the court finds facts relevant to any jurisdiction issue concerning whether Defendant Kerns was within the scope and course of his employment to be intertwined with issues concerning the merits of the FTCA claim. Accordingly, the court appropriately considers the facts in the light most favorable to Plaintiff. *See Kerns*, 585 F.3d at 192-93.

advised her that he was to meet her concerning her case. The undersigned finds that Plaintiff has presented sufficient evidence to set forth a plausible claim that Defendant Kerns was acting within the scope of his employment and that she is entitled to discovery on this claim. For example, discovery is likely to elucidate the parties as to whether Plaintiff was arrested in December 2009, as she claims, or in August 2010, as the Federal Defendants claim.

Plaintiff also argues it may be inferred that Defendant Kerns' "continued harassment of Plaintiff" was "within the scope of his employment and his employer's interests" because he "utilized his employment as a law enforcement officer to facilitate his predatory deeds[,]" which made "his employment and his actions [] intimately intertwined." Pl.'s Mem. 10. Plaintiff argues Defendant Kerns' "consistently intimidating and ultimately threatening and raping Plaintiff ensur[ed] that she would not have the wherewithal to defend her case." *Id.* Accordingly, Plaintiff submits that she has created "sufficient question as to the degree of Kerns' deviation from the normal service of his employer[,]" making dismissal at this stage improper. *Id.* As the South Carolina Supreme Court noted in *Carroll*, an employee's departure from the scope of employment is typically a question of degree. *See* 35 S.E.2d at 427. Here, Plaintiff should be permitted discovery into facts potentially relevant to this issue.

In making this recommendation, the undersigned does not suggest, though, that further consideration of this scope-of-employment issue may not become appropriate at the summary-judgment stage. In considering the applicable case law, the court notes that the cases cited by both parties on this issue were decided at either the summary-judgment or the post-trial-and-verdict phase of the litigation. *See* Defs.' Mem. 11, Pl.'s Mem. 7-9; *Gainey*, 2008 WL 706916 (considering issue at summary judgment phase, citing various depositions, affidavits, and documents); *Lane*, 136 S.E.2d at 714 (considering issue after jury verdict); *Carroll*, 35 S.E.2d

425 (considering issue after jury verdict); *Lazar v. Great Atl. & Pac. Tea Co.*, 14 S.E.2d 560 (S.C. 1941) (considering issue after jury verdict); *see also McNair v. Land Lease Trucks, Inc.*, 95 F.3d 325, 329-30 (4th Cir. 1996) (considering North Carolina law and finding district court erred in granting a motion to dismiss on issue of whether employee was within course and scope of his employment).

2. USA's Potential Supervisory Liability Based on Actions/Inactions of Individual Federal Defendants

The court next considers the argument of Defendant USA[18] that it is entitled to dismissal of Plaintiff's claim of negligent supervision. *See* Fed. Defs.' Mem. 13-15. Defendants first generally argue that there is "well established precedent in this Circuit establishing" claims of negligent supervision are "not cognizable under the FTCA." *Id.* at 13. However, the undersigned finds the cases Federal Defendants cite for this proposition are not necessarily dispositive of the issues before the court. For example, Federal Defendants cite *Sheridan v. United States,* 969 F.2d 72 (4th Cir. 1992), for the proposition that "[a]llegations of negligent supervision by government officials are . . . insufficient, because the United States owes no general duty to the public to supervise its employees or agents with care." 969 F.2d at 75 (internal quotation marks omitted). However, in that case, the Fourth Circuit Court of Appeals was focused on the plaintiff's argument that two internal governmental regulations (concerning employment matters between the tortfeasor employee and the government employer) provided a basis for the plaintiff's claim that the government had negligently supervised its tortfeasing employee, thereby causing plaintiff harm. *Id.* The court found the internal regulation did not create a duty to plaintiff and none existed otherwise. The court also expressly noted that Maryland law, which applied to the

---

[18] The Federal Defendants discuss the FTCA claim of supervisory liability, which appropriately is brought against Defendant USA only, in the same section in which they discuss Plaintiff's *Bivens* claims against the Individual Federal Defendants. Defs.' Mem. 12-15. Those *Bivens* claims are discussed above in Section IV (B) of this Report.

substance of the plaintiff's FTCA claims, did not recognize a duty of the government to plaintiff, who had been shot by a "drunken, off-duty serviceman" when she was driving on a public road near the edge of the military base at which the serviceman resided. 969 F.2d at 74.[19] Here, South Carolina substantive law applies to Plaintiff's FTCA claims. As the Federal Defendants note, South Carolina law recognizes the tort of negligent supervision in some situations.

In *Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992), the South Carolina Supreme Court found that while the common law ordinarily imposes no duty to act, there are certain circumstances in which an employer may be held liable for negligent supervision. In *Degenhart*, the court cited to section 317 of the Restatement of Torts (2d), and found that an employer may be held liable for negligent supervision if the employee, outside the scope of his employment, intentionally harms another when he:

(i) is upon the premises in possession of the [employer] or upon which the [employee] is privileged to enter only as his [employee], or
(ii) is using a chattel of [the employer], and . . . [the employer]
  (i) knows or has reason to know that he has the ability to control his [employee], and
  (ii) knows or should have known of the necessity and opportunity for exercising such control.

*Degenhart*, 420 S.E.2d at 496 (quoting Restatement (Second) of Torts § 317 (1965) (alterations in *Degenhart*). The South Carolina Supreme Court recently revisited this duty and stated the following:

In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public.

---

[19] To the extent Defendant USA argues it cannot be liable for negligent supervision based on the so-called "intentional-tort" exception to the FTCA, 28 U.S.C. § 2680(h), that argument is discussed within.

*James v. Kelly Trucking, Co.*, 661 S.E.2d 329, 330 (S.C. 2008). Supervisory liability under *Degenhart* and its progeny requires the court to focus specifically on what the employer knew or should have known about the specific conduct of the employee in question. *See also Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 302-03 (S.C. 1996) (finding defendant employer breached duty of care to plaintiff who was harmed by its employee/agent's negligent mishandling of insurance application because employer had notice of that employee/agent's prior negligent mishandling of insurance applications); *Charleston, S.C. Registry for Golf and Tourism, Inc. v. Young Clement Rivers and Tisdale, LLP*, 598 S.E.2d 717, 723 (S.C. App. 2004) (finding supervisory liability inappropriate when the record contained no evidence that the defendant knew, or should have known, of its employee's conduct causing the alleged harm); *Doe by Doe v. Greenville Hospital System*, 448 S.E.2d 564 (S.C. App. 1994) (holding defendant knew or should have known of the necessity to control based on a similar prior instance of inappropriate sexual conduct with a minor); *Brockington v. Pee Dee Mental Health Center*, 433 S.E.2d 16 (S.C. App. 1993) (concluding that no evidence existed to support the contention that defendant knew or should have known of the necessity to exercise control over the employee prior to the time he assaulted the patient).

Accordingly, the question is whether Defendant USA knew or should have known facts about Defendant Kerns that would suggest that employing and retaining Kerns as a USSS agent with authority to investigate criminal matters and have contact with criminal targets would pose an unreasonable risk of harm. Defendant USA seeks summary judgment, claiming the facts do not support such a claim because "there is no evidence Defendant Kerns had any history of inappropriate sexual behavior prior to the March 18, 2010 incident, of which the USSS was

aware." Defs.' Mem. 14.[20] Defendant USA submits that the evidence indicates Defendants Kerns and Johnson followed appropriate procedures during their initial contact with Plaintiff on December 9, 2009, and that Defendant Griffin took appropriate, timely action to investigate upon learning of Defendant Kerns' conduct. *Id.*

Plaintiff does not specifically respond to this portion of the Federal Defendants' Motion.[21] Rather, Plaintiff indicates the only argument the Federal Defendants made regarding negligent supervision was to briefly argue that claims of negligent supervision are barred by an exception to the FTCA. Pl.'s Mem. 16 (referring to Defs.' Mem. 19). The court discusses that exception, *infra.*

Having considered the argument and applicable law, the undersigned recommends that the portion of the Motion seeking to dismiss Plaintiff's FTCA claim of negligent supervision against Defendant USA should be *denied*. Although the Federal Defendants cite cases that reasonably support their argument, those cases involve appellate court rulings in cases in which discovery had been conducted and, in some cases, after a jury trial had taken place. *See Degenhart*, 420 S.E.2d 495 (at summary judgment stage); *Charleston, SC Registry for Tourism*, 598 S.E.2d 717 (at summary judgment stage); *Greenville Hosp. Sys.*, 448 S.E.2d 564 (after jury trial); *Brockington*, 433 S.E.2d 16 (after jury trial).

---

[20] Defendants attach a copy of the statement Plaintiff signed on December 3, 2009, arguing it demonstrates that Defendants Kerns and Johnson followed appropriate procedures during the initial contact and interview with Plaintiff, "including reading her Miranda rights, having her sign a written statement acknowledging her rights, and informing her she was not under arrest." Def.s' Mem. 13, ECF No. 52; Dec. 3, 2009 Statement, ECF No. 52-1. Because this court considers Defendants' Motion as one pursuant to Rule 12, it does not consider the attached statement in making its Report and Recommendation. *Cf.* Fed. R. Civ. P. 12(d). To the extent the court were to consider this statement, however, the undersigned notes it does not, on its face, inform Plaintiff she was not under arrest.
[21] Plaintiff's principal discussion of supervisory liability in her memorandum concerns her claim of supervisory liability in the constitutional tort/*Bivens* context only. *See* Pl.'s Mem. 11-15.

Here, at the pleadings stage, the undersigned is of the opinion that Plaintiff has pleaded facts sufficient to make out a plausible claim for negligent supervision. For example, Plaintiff avers that Defendant Kerns regularly contacted her on a government-issued phone and drove a government vehicle to meet with her during regular business hours, and that his "USSS supervisors knew or should have known, of Defendant Kerns' well-circulated reputation for alcohol consumption and womanizing in the Greenville, South Carolina area." Am. Compl. ¶¶ 16-17, 23. That she has not proffered "evidence" at this juncture that "Defendant Kerns had any history of inappropriate sexual behavior prior to the March 18, 2010 incident, of which the USSS was aware[,]" Defs.' Mem. 14, is understandable. The undersigned is of the opinion that Plaintiff's claim of negligent supervision should survive this motion-to-dismiss challenge. She has provided sufficient facts to state a plausible claim—one that she should be permitted to pursue through discovery. *Cf. Rankin v. Wal-Mart Stores East, LP*, No. 3:13-CV-247-DCK, 2013 WL 3816621 (W.D.N.C. July 22, 2013) (denying motion to dismiss in premises liability matter, noting plaintiff not required to provide specific basis for averment that defendant had knowledge of substance of floor).

3.   Other Tort Claims Issues

In her FTCA Cause of Action against the USA, Plaintiff lists the following "common law tort claims:" "malicious prosecution; intentional infliction of emotional distress; negligent selection, supervision and retention of agents and employees; and common law conspiracy." Am. Compl. ¶ 53. Plaintiff's Amended Complaint also includes specific causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress against Defendants Kerns, Johnson, Griffin, Sullivan, and Napolitano. *Id.* ¶¶ 60-70. Plaintiff also brings

a cause of action for negligence against Defendants USA, Griffin, Sullivan, Napolitano, and Others Unknown. *Id.* ¶¶ 74-83.

    a. "Intentional Torts" Exception to FTCA Claims, 28 U.S.C. § 2680(h).

Although they do not detail their argument, the Federal Defendants assert, almost in passing, that Plaintiff's "allegation of malicious prosecution is [] specifically prohibited under 28 U.S.C. § 2680(h)." Defs.' Mem. 16. In another section of their Memorandum, the Federal Defendants argue that Plaintiff's negligence cause of action should be dismissed based on § 2680(h), as well. Defs.' Mem. 19-20. The negligence cause of action avers claims regarding failure to supervise, establish policies, and train. *See* Am. Compl. ¶¶ 74-83. The Federal Defendants argue these negligence allegations "are simply variations of negligent hiring and supervision claims that are squarely barred by § 2680(h)." Defs.' Mem. 19.[22]

Other than arguing these causes of action are "specifically prohibited" or "squarely barred," the Federal Defendants do not provide sufficient argument explaining why they contend 28 U.S.C. § 2680(h) bars such claims. Indeed, the Federal Defendants do not provide the text of that statute that they argue bars certain FTCA claims.

Plaintiff, however, discusses 28 U.S.C. § 2680(h) more fully and argues that this so-called "intentional torts exception" to FTCA liability does not apply as to claims concerning actions by Federal Defendants based on the law-enforcement-officer proviso in that statute. Subsection (h) of § 2680 provides as follows:

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, **with regard to acts or omissions of investigative or law enforcement officers** of the United States

---

[22] Defendants also note in passing that the claims should be dismissed because the claims against the Individual Federal Defendants are dependent upon the relationship between them and the USA. Defs.' Mem. 19-20. The argument regarding who the proper defendant is in an FTCA claim is discussed elsewhere.

Government, the provisions of this chapter and section 1346(b) of this title **shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution**. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h) (bolded emphasis added). Relevant to this analysis, 28 U.S.C. § 1346(b) provides that federal courts have jurisdiction over claims for monetary damages against the United States "for injury or loss of property, or personal injury or death caused by the wrongful act or omission of any employee of the Government **while acting within the scope of his office or employment**, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (emphasis added).

Plaintiff argues that the law-enforcement-officer proviso creates an "exception to the exception" excluding liability for intentional torts, meaning § 2680(h) does not bar her claims of malicious prosecution, negligent supervision or hiring. Pl.'s Mem. 15-16. Plaintiff submits she has "pleaded sufficient factual allegations to lead to plausible inferences that Defendants were acting within the scope of their employment" and that the law-enforcement-officer proviso applies to "all USSS defendants as well as Napolitano who, by virtue of her office, may effect arrests or initiate investigations." Pl.'s Mem. 16. Elsewhere in her Response, Plaintiff notes the United States Supreme Court recently considered the law-enforcement-officer proviso and found that "the waiver [of sovereign immunity] effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." *Millbrook v. U.S.*, 133 S. Ct. 1441,

1446 (2013). In other words, the Court found the proviso focuses on "the *status* of persons whose conduct may be actionable, not the types of activities that may give rise to a tort claim against the United States." 133 S. Ct. at 1445 (emphasis in original).

Defendants did not file a reply to Plaintiff's response to the Motion to Dismiss, so they did not respond to this argument. As discussed above, the Federal Defendants take the position that Kerns was not acting within the scope of his employment when undertaking the conduct about which Plaintiff sues.

However, all parties agree that Defendants Johnson, Griffin, Sullivan, and Napolitano were acting within the scope of their employment. There can be no serious question but that they are all "investigative or law enforcement officers" under the statute. By its terms, the proviso applies to "any claim arising [] out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). Although making the argument without regard to the law-enforcement-officer proviso, the Federal Defendants noted the "sweeping language" of § 2680(h) in "excluding any claim arising out of assault and battery," in arguing all of Plaintiff's negligence claims were actually "arising out of assault and battery." Defs.' Mem. 19-20 (quoting *United States v. Shearer*, 473 U.S. 52, 55 (1985)). By the same token, all of Plaintiff's claims against the Federal Defendants "arise out of" Kerns' alleged assault and battery. The court recommends *denying* the Federal Defendants' Motion to Dismiss as to FTCA claims against the United States based on acts or omissions of the Individual Federal Defendants within the scope of their employment.

> b. Tort Claims Against the Individual Federal Defendants in Their Official Capacities

The Individual Federal Defendants also seek to dismiss Plaintiff's Cause of Action for "Negligence," Count IX, to the extent it is brought against Individual Federal Defendants Griffin,

Sullivan, and Napolitano. Defs.' Mem. 18. They argue the court lacks jurisdiction as to claims against them, as federal employees sued in their official capacities. They note that the FTCA's waiver of sovereign immunity is narrow and permits potential relief for torts "only on terms and conditions strictly prescribed by Congress." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990). The exclusive remedy for an FTCA claim is against the United States. For individual employees of the federal government who were acting within the scope of their official duties at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States District Court "shall be deemed an action against the United States under the provisions of [the FTCA] and all references thereto, and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1).

Here, Plaintiff does not dispute that the Individual Federal Defendants Johnson, Griffin, Sullivan, and Napolitano were acting within the scope of their official duties at the time of the incident out of which the claim arose. *See* Am. Compl. ¶ 52. Accordingly, of the Federal Defendants, the United States is the only proper Defendant, and the Individual Federal Defendants Johnson, Griffin, Sullivan, and Napolitano are entitled to dismissal. It is recommended that this portion of the Federal Defendants be *granted*.

4. Infliction of Emotional Distress

Plaintiff brings causes of action for intentional infliction of emotional distress, as well as for negligent infliction of emotional distress against all Individual Federal Defendants, as well as Defendant Kerns. Am. Compl. ¶¶ 60-70 (Counts VI and VII). The Federal Defendants move to dismiss the cause of action for intentional[23] infliction of emotional distress, arguing Plaintiff has not set forth facts to support such a claim and asking the court dismiss the claim as a matter of

---

[23] Although the heading of this portion of Federal Defendant's Memorandum indicates both Counts VI (intentional infliction of emotional distress) and VII (negligent infliction of emotional distress), they only discuss the claim for intentional infliction in the body of the memorandum.

law. Defs.' Mem. 16-17. Plaintiff does not respond at all to this portion of the Federal Defendants' Motion.

To establish intentional infliction of emotional distress under South Carolina law, a plaintiff must establish the following:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable man could be expected to endure it.

*Melton v. Medtronic, Inc.*, 698 S.E.2d 886, 891 (S.C. App. 2010). South Carolina law provides that the court is to decide whether a defendant's conduct may be reasonably described as so extreme and outrageous as to warrant recovery. *See Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602, 609 (S.C. App. 1984) (decision quashed on other grounds, 336 S.E.2d 372 (S.C. 1985)). Only when reasonable persons could differ does it become a question of fact. 321 S.E.2d at 610.

Even considering all facts in the light most favorable to Plaintiff, the undersigned is of the opinion that Plaintiff has not set forth sufficient facts to demonstrate that the conduct or omissions of the Federal Defendants intentionally inflicted emotional distress on Plaintiff, or that their actions/inactions were so "extreme and outrageous" as to "exceed all possible bounds of decency." Additionally, Plaintiff has not opposed this portion of the Federal Defendants' Motion. Accordingly, it is recommended that Plaintiff's cause of action for intentional infliction of emotional distress be dismissed as to Defendants Johnson, Griffin, Sullivan, and Napolitano.[24]

---

[24] The Federal Defendants do not argue that this cause of action is one that should be raised against Defendant USA, rather than against the Individual Federal Defendants in their official capacities.

Additionally, Plaintiff cannot establish a claim for negligent infliction of emotional distress. Under South Carolina law, negligent infliction of emotional distress is restricted to allow for "bystander recovery" only. To establish a claim for negligent infliction of emotional distress a plaintiff must establish: defendant's negligence caused death or serious injury to another, plaintiff was a bystander in close proximity to the accident, plaintiff and the victim were closely related, plaintiff witnessed the incident and plaintiff must exhibit physical manifestations of emotional distress that can be established by expert testimony. *Kinard v. Augusta Sash & Door Co.*, 336 S.E.2d 465, 467 (S.C. 1985). Based on the facts pleaded by Plaintiff, there is no plausible, or even possible theory under which she could recover for negligent infliction of emotional distress against any Defendant. It is recommended that Count VII be dismissed.

V.     Conclusion and Recommendation

Based on the foregoing, the undersigned recommends the following:

- Regarding *Bivens* Claims against the Federal Defendants, [Count I (styled as claim for deprivation of constitutional rights pursuant to 42 U.S.C. § 1983); Count IV ("Bivens Cause of Action Against Federal Agents"); and Count V ("Conspiracy Cause of Action Under Bivens and § 1983")]:

  o   To the extent Plaintiff has brought *Bivens* claims against Defendant USA and against Federal Defendants Johnson, Griffin, Sullivan, and Napolitano acting in their *official* capacities, the court lacks jurisdiction to consider such claims, and this portion of the Federal Defendants' Motion should be granted and these claims be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure;

  o   The Individual Federal Defendants' Motion to Dismiss should be granted as to Plaintiff's *Bivens*-related causes of action brought against them in their *individual* capacities;

- As to Tort-Based Claims against the Federal Defendants [Count III (FTCA against USA); Count V1 (Intentional Infliction of Emotional Distress); Count VII (Negligent Infliction of Emotional Distress); and Count IX (Negligence)]:

  o   Defendant USA's Motion to Dismiss Plaintiff's FTCA claim should be denied, both regarding Plaintiff's claim that Defendant USA is vicariously liable for the tortious conduct of Defendant Kerns and regarding Plaintiff's claim of negligent

supervision against Defendant USA (this is included in Counts III and IX of Plaintiff's Amended Complaint);

o The Motion to Dismiss should be denied as to the argument that 28 U.S.C. § 2680(h) bars all FTCA claims against Defendant USA based on the actions of Individual Federal Defendants Johnson, Griffin, Sullivan, and Napolitano;

o As it is undisputed that Individual Federal Defendants Johnson, Griffin, Sullivan, and Napolitano were acting within the scope and course of their federal employment, they should be dismissed as parties and Defendant USA should be substituted as to all tort claims brought against them; and

o The Motion to Dismiss should be granted as to Plaintiff's causes of action for negligent and intentional infliction of emotional distress (Counts VI and VII of Plaintiff's Amended Complaint).

In summary, the undersigned recommends the Federal Defendants' Motion to Dismiss, ECF No. 52, be granted in part and denied in part: *all* claims against Individual Federal Defendants Johnson, Griffin, Sullivan, and Napolitano should be dismissed; and the tort claims brought against Defendant USA (contained in Counts III and IX) should be permitted to proceed.

IT IS SO RECOMMENDED.

October 15, 2013                                        Kaymani D. West
Florence, South Carolina                               United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**